IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RODNEY EUGENE STANLEY, | ) | Case No. 10-50152 |
| | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter came before the Court on June 30, 2010, for a hearing on confirmation of a Chapter 13 plan of reorganization, filed by Kathryn L. Bringle, the Chapter 13 Trustee, on May 6, 2010. Kathryn L. Bringle appeared in her capacity as Chapter 13 Trustee (the "Trustee"), Vernon C. Cahoon appeared on behalf of the Trustee, and Roger S. Tripp appeared on behalf of the above-referenced debtor (the "Debtor"). At the hearing, the Court ruled from the bench. This opinion memorializes the basis for the Court's ruling.

**I. JURISDICTION**

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(L), which this Court has the jurisdiction to hear and determine.

**II. FACTS**

On January 29, 2010, the Debtor filed his Chapter 13 petition. His spouse, Mrs. Stanley, did not file a bankruptcy petition. The Debtor is a self-employed truck driver, doing business as Triad

1

Express.  Mrs. Stanley is unemployed.

The Debtor's Statement of Financial Affairs shows net income from Triad Express of $30,007 in 2006, $28,216 in 2007, and $19,502 in 2008.  It shows no income from Mrs. Stanley.  The Debtor's Form B22C shows that he and Mrs. Stanley had below-median income for a family of four in North Carolina during the six month period preceding the filing of the petition.

The Debtor and his family live in a house that is jointly-owned by the Debtor and Mrs. Stanley.  Schedule A lists the value of the property as $150,520.  Schedule D lists a lien on the property of $116,300.  Aside from the trailers that the Debtor uses in the trucking business and a few other items, the personal property listed in Schedule B is owned jointly by the Debtor and Mrs. Stanley.  Schedule F lists $237,498.08 in unsecured debt.  Most of this debt is business debt for the Debtor's trucking business, and the rest is consumer debt.

In the Debtor's original Schedule I, filed shortly after the petition, he listed $19,000 in monthly income from the trucking business.  Schedule J showed $15,587 in business expenses and $2,697 of household expenses.  The Debtor's monthly net income from his trucking business was $3,413.  Schedule I also showed $1,000 in monthly income for Mrs. Stanley; this income was from unemployment compensation.  Schedule J showed total monthly expenses of $18,587.  However, it erroneously showed $413 in net income, rather than $1,413, since the Debtor neglected to include the $1,000 of unemployment income from Mrs. Stanley in the calculation.

On May 6, 2010, the Trustee filed the Debtor's proposed Chapter 13 plan (the "Plan").  The Plan provided for monthly payments of $430 over 60 months.  The estimated dividend to unsecured creditors was 9%.  The Plan showed that the estate had a liquidation value of $22,678.

On June 22, 2010, the Debtor filed amended Schedules I and J.  The unemployment income

of Mrs. Stanley was reduced slightly to $988, and Schedule J was amended to correctly reflect total income of $19,988. However, the Debtor also increased his listed expenses to $19,568, which resulted in net income of $420. The Debtor increased his personal transportation expense from $160 to $310 and added three expenses of Mrs. Stanley: a $289 lease payment for her automobile, a $395 installment payment on her credit card debt, and a $72 payment for her student loan debt. These four changes accounted for the bulk of the increase in the Debtor's expenses.

Mrs. Stanley testified that the $988 of unemployment compensation that she received each month was spent on her car payment, her college loan, and her two credit card debts. These payments totaled $756 each month, but she sometimes paid more than the minimum payments on the credit cards. She testified that if there was any money left over after these payments, her income would be used to help pay household expenses.[1] However, she expected her unemployment income to terminate in two months since only $1,827 in benefits remained. Mrs. Stanley testified that she did not want to file bankruptcy because she wanted to maintain her good credit. She has been looking for employment since May of 2009 but has been unable to find anything. Nevertheless, she hopes to have a job before her benefits terminate.

### III. DISCUSSION

A core principle in bankruptcy is that creditors should be treated equally. See, e.g., Union Bank v. Wolas, 502 U.S. 151, 161 (1991) (noting "the prime bankruptcy policy of equality of distribution among creditors of the debtor"); N.Y. State Elec. & Gas Corp. v. McMahon (In re

---

[1] Mrs. Stanley's student loan had a balance of about $1,000 and was incurred prior to the marriage. The monthly lease payment on her automobile was $289.33. She had a credit card with Chase and one with Discover. The balance on her Discover card was $2,530.89, and the minimum monthly payment was $203. The balance on her Chase card was $6,760.93, and the minimum monthly payment was $192.

3

McMahon), 129 F.3d 93, 97 (2d Cir. 1997) (noting "the Bankruptcy Code's strong policy favoring equal treatment of creditors"). This principal is manifested throughout the Bankruptcy Code, including the provision in Section 1325(a)(3) that requires a Chapter 13 plan to be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Every Chapter 13 debtor bears the burden of proving, by a preponderance of the evidence, that her plan was proposed in good faith. In re Walker, No. 07-11819, slip op. at 3 (Bankr. M.D.N.C. 2008) (2008 WL 2559420).

The Bankruptcy Code does not contain a definition of "good faith," and the legislative history is silent on the issue. Deans v. O'Donnell, 692 F.2d 968, 969 (4th Cir. 1982); In re Schaitz, 119 B.R. 637, 640 (Bankr. E.D. Wis. 1990) ("The term, 'good faith,' is not defined in the Code or in its legislative history, and courts have said that no precise or comprehensive definition is possible.").[2] "While no precise definition can be sculpted to fit the term 'good faith' for every Chapter 13 case . . . , 'the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan.'" Id. at 972 (quoting 9 Collier on Bankruptcy, 9.20 at 319 (14th ed. 1978)); see also In re Solomon, 67 F.3d 1128, 1134 (4th Cir. 1995) ("the good faith inquiry is intended to prevent abuse of the provisions, purpose, or spirit of Chapter 13 ") (citing Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986)); In re Rimgale, 669 F.2d 426, 431 (7th Cir. 1982); In re Estus, 695 F.2d 311, 315 (8th Cir. 1982).

Good faith is determined on a case-by-case basis by examining the totality of the

---

[2] Also, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-9, 119 Stat. 23, did not change the law governing this issue, and pre-BAPCPA caselaw interpreting Section 1325(a)(3) is still valid. Walker, slip op. at 3 n.3.

4

circumstances.

> This totality-of-the-circumstances inquiry focuses on such factors as the percentage of proposed repayment to creditors, the debtor's financial situation, the period of time over which creditors will be paid, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing the facts of the case, the nature of the debtor's pre-petition conduct that gave rise to the debts, whether the debts would be dischargeable in a Chapter 7 proceeding, and any other unusual or exceptional problems the debtor faces.

Solomon, 67 F.3d at 1134. "[T]he focus of the good faith inquiry under both Section 1307 and Section 1325 is often whether the filing is fundamentally fair to creditors." In re Love, 957 F.2d 1350, 1357 (7th Cir. 1992).

The court has an independent obligation to determine whether Section 1325(a)(3) is satisfied, regardless of whether a party objects to the plan's confirmation. In re Kenney, 399 B.R. 516, 521 (Bankr. N.D. Okla. 2008) ("In every Chapter 13 case, the court has an independent duty to assess whether a plan was proposed in good faith."); Schaitz, 119 B.R. at 639 ("[T]he court has a duty sua sponte to inquire into good faith, even if no objection to confirmation has been filed.").

The income and expenses of a non-filing spouse should be considered in determining whether a plan has been proposed in good faith under Section 1325(a)(3). In re McNichols, 249 B.R. 160, 170 (Bankr. N.D. Ill. 2000) ("The family is a functioning unit, of which the Debtor is an integral and important member, and the totality of the family's income and expenses is appropriately considered in calculating both the disposable income of the Debtor for purposes of § 1325(b)(2) as well as the good faith requirement of § 1325(a)(3)."); In re Bottorff, 232 B.R. 171, 173 (Bankr. W.D. Mo. 1999) ("bankruptcy courts in other jurisdictions have consistently interpreted § 1325 to require the consideration of a non-debtor spouse's income in determining the debtor's disposal [sic] income and, ultimately, the debtor's good faith in proposing the Chapter 13 plan"); In re Cardillo, 170 B.R.

5

490, 492 (Bankr. D.N.H. 1994) (finding that a plan was not proposed in good faith under § 1325(a)(3) when the debtor had not applied all of her disposable income and had failed to properly schedule her non-filing spouse's income and expenses).

The income of a non-filing spouse is also regularly and properly considered in determining a debtor's disposable income and determining whether to dismiss a case under Section 707(b). See In re Boatright, 414 B.R. 526, 532 (Bankr. W.D. Mo. 2009); In re Harter, 397 B.R. 860, 864 (Bankr. N.D. Ohio 2008); In re Rysso, 321 B.R. 522, 525 (Bankr. D. Minn. 2005); In re Bottelberghe, 253 B.R. 256, 262 (Bankr. D. Minn. 2000); In re Reese, 236 B.R. 371, 375-76 (Bankr. N.D. Ohio 1999); In re Bicsak, 207 B.R. 657, 662 (Bankr. W.D. Mo. 1997); In re Dempton, 182 B.R. 38, 40 (Bankr. W.D. Mo. 1995); In re Wilkinson, 168 B.R. 626, 628 (Bankr. N.D. Ohio 1994); In re Berndt, 127 B.R. 222, 225 (Bankr. D.N.D. 1991); In re Strong, 84 B.R. 541, 543 (Bankr. N.D. Ind. 1988). See also In re Hammock, No. 09-11485-8-RDD, slip op. at 6-7 (Bankr E.D.N.C. July 8, 2010) ("The calculation of current monthly income includes the income of both spouses, even if one is a non-filing spouse, and the non-filing spouse's contribution to the debtor's household support.") (citing In re Vollen, 426 B.R. 359, 366 (Bankr. D. Kan. 2010)). Moreover, a married debtor is required by the Official Forms and Bankruptcy Rule 1007(b) to report the income and expenses of a non-filing spouse. Fed. R. Bank. P. 1007(b)(1) ("the debtor, unless the court orders otherwise, shall file the following schedules, statements, and other documents, prepared as prescribed by the appropriate Official Forms.").

> The question of good faith is highly subjective, and the amount of payments being made to creditors in chapter 13 cases is an important element to be considered when the court is asked to approve a proposed plan. The concern of the court is that the debtors and all others involved, case by case, receive equal treatment in every respect.

Schaitz, 119 B.R. at 639.  When a debtor proposes to pay all of the debts of his non-filing spouse to the detriment of his own creditors, such a circumstance is relevant to the good faith inquiry.  In re Kern involved a Chapter 13 debtor who had made fraudulent representations in obtaining unsecured credit and did not include the income of his non-filing spouse in computing his plan payment, on the basis that his wife was "old fashioned" and believed a husband should be the sole provider for a family.  In re Kern, 40 B.R. 26, 27 (Bankr. S.D.N.Y. 1984).  A creditor objected, asserting that the plan violated the good faith standard of Section 1325(a)(3).  Id. at 26.  The Kern court stated:

> In essence, [the debtor] seeks a discharge of debts incurred through intentional fraud pursuant to a plan that seeks, in effect, to have his creditors bear the brunt of a budget where he pays all living expenses for him and his wife even though his wife can afford to bear her share. While one can appreciate his wife's desire to conserve her earnings for possible contingencies and her desire to live off her husband's income, there comes a point beyond which creditors should not be required to accept a plan.
>
> Congress did not leave the debtor bridled only by his imagination. For this Court to confirm [the debtor's] plan as proposed on the basis of his assertion that [the non-filing spouse] will divorce him if asked to contribute to her own support is simply untenable.  To do so would mean forcing [the debtor's] creditors to subsidize part of her daily living expenses.  The Code contemplates no such result.  Instead it requires a meaningful budget accompanied by devotion of much of the surplus income to repay creditors.  It does not require a set percentage.  But it does require the debtor's best efforts.  Such are not to be found through a restructuring of family expenses to lessen the surplus and make less available to creditors.

Id. at 28-29 (internal citation omitted).

In this case, the Debtor has not satisfied his burden to show that his plan was proposed in good faith.  By claiming an expense of $395 so that Mrs. Stanley could make payments on her credit cards, thereby keeping such debts from falling into default, the Debtor proposed a plan that would pay off his wife's unsecured creditors in full, while his unsecured creditors would

7

receive only 9% of their claims. Thus, the Debtor is attempting to force his unsecured creditors to subsidize the repayment of his wife's unsecured creditors.

Mrs. Stanley contributes very little, if any, to their joint household expenses since most, if not all, of her income is directed to pay her credit card debt, lease payments, and student loan. Additionally, the unemployment income of Mrs. Stanley is expected to terminate very soon. The notion that she will obtain a job in the next few weeks, after she has searched unsuccessfully for a job for over a year, is tenuous at best. Once her unemployment income ceases, the Debtor's income will be the only source for paying their joint debts <u>and</u> Mrs. Stanley's debts.

The Court does not hold that a plan providing for the payment of the separate debt of a non-filing spouse always precludes a finding of good faith under Section 1325(a)(3). Even when the plan proposes to pay a higher dividend to the creditors of the non-filing spouse than to the creditors of the debtor, no bright line rule can be articulated. In each case, good faith must be determined in light of the facts of the case. What <u>can</u> be said is that the proposed payment of a substantially higher dividend to the creditors of the non-filing spouse raises a serious question of good faith, which the court must view in the totality of the circumstances. In this case, the Plan proposes for Ms. Stanley's creditors to receive 100%, and the Debtor's creditors to receive only 9%, and all the while the Debtor would pay all, or almost all, of their joint household expenses. In the circumstances of this case, the Court finds that the Plan is fundamentally unfair to the Debtor's creditors.[3]

---

[3] On the other hand, no good faith issue is raised by a Chapter 13 plan that proposes to pay the creditors of the non-filing spouse the same dividend or a lesser dividend than the creditors of the debtor. Such an arrangement would not be unfair to the debtor's creditors. Whether the creditors of the non-filing spouse would accept such treatment is another matter.

Admittedly, denying confirmation of the Plan puts the Debtor in a difficult position, but the receipt of a Chapter 13 discharge is not an inalienable right.  Grogan v. Garner, 498 U.S. 279, 286 (1991) ("We have previously held that a debtor has no constitutional or 'fundamental' right to a discharge in bankruptcy."); U.S. v. Kras, 409 U.S. 434, 447 (1973) ("There is no constitutional right to obtain a discharge of one's debts in bankruptcy."); In re Mandalay Shores Co-op. Housing Ass'n, Inc., 63 B.R. 842, 851 n.14 (N.D. Ill. 1986) ("But the Code does not give all debtors an inalienable right to discharge: It only permits discharge of 'dischargeable debts.'").  The Debtor has options.  He can convert his case to Chapter 7.  Mrs. Stanley can file a Chapter 13 petition, allowing her and the Debtor to propose a joint plan that treats their creditors equally.  The Debtor can propose a plan that does not provide for substantially disparate treatment of Mrs. Stanley's creditors.

Furthermore, the Debtor has also not satisfied his burden of showing that the plan is feasible, as required by 11 U.S.C. § 1325(a)(6).  The evidence presented showed that Mrs. Stanley's income would terminate within two months, resulting in monthly net income of negative $568. The Debtor needs monthly net income of $430 in order to make his plan payments.  The Court cannot overlook a monthly deficit of almost one thousand dollars in the Debtor's budget.  Since it does not appear that the Debtor will be able to make all of the payments required under the plan, the Court also will deny confirmation on the basis of feasibility.

## IV.  CONCLUSION

The fundamental problems with the Debtor's Plan are that (1) it proposes to use the Debtor's income to pay the unsecured creditors of Mrs. Stanley in full while the unsecured

9

creditors of the Debtor receive a small fraction of their claims and (2) Mrs. Stanley contributes little or nothing to pay their joint household expenses. The Debtor has not satisfied his burden of showing that the plan was proposed in good faith, as required by Section 1325(a)(3). In addition, the Court cannot conclude that the Plan is feasible given the anticipated, abrupt end of Mrs. Stanley's unemployment compensation. Therefore, confirmation of the Plan will be denied.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| RODNEY EUGENE STANLEY, | )   Case No. 10-50152 |
| | ) |
| | )   Chapter 13 |
| Debtor. | ) |
| | ) |

**PARTIES IN INTEREST**

Rodney E. Stanley

Roger S. Tripp, Esq.

Kathryn L. Bringle, Trustee

Michael D. West, Bankruptcy Administrator